Mackell *v.* Graciano, Appellant.

Argued September 25, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*James H. Brennan,* with him *Maurice Chaitkin,* and *Brennan and Brennan,* for appellants.

*William S. Schweers,* with him *McArdle, Harrington & McLaughlin,* for appellee.

OPINION BY JUSTICE ALPERN, December 29, 1961:

This case arises out of an action in assumpsit where the jury returned a verdict in the amount of $5,500. The defendants filed motions for judgment n.o.v. and for a new trial.

This was the second trial. In the first trial held in 1956, the jury awarded the plaintiff $5,386.70. The defendants filed motions for judgment n.o.v. and for a new trial. Because the court reporter had died before the testimony could be transcribed, the court ordered a new trial. In the second trial, the jury returned a verdict for the plaintiff in the sum of $5,500. The defendants again filed motions for judgment n.o.v. and

for a new trial. They were refused by the court below.

Leonard J. Mackell filed suit in assumpsit on March 30, 1953, against Joseph J. Graciano, Richard A. Graciano and Joseph F. Graciano, a partnership doing business as Joseph J. Graciano Company. The suit was based upon an oral contract with the Graciano Company which Mr. Mackell claimed entitled him to a ten per cent commission on the contract price of $47,504, paid to the Gracianos for work done on the exterior of the Grant Building under a contract dated September 10, 1951.

The contract developed under the following circumstances: Mr. Mackell had known Verne Hunter since 1947 and had a close personal association with him. Mr. Hunter was the building superintendent of the Grant Building; Mr. Mackell worked for a company with offices on the same floor. In June of 1950, Mr. Hunter mentioned to Mr. Mackell that the Grant Building was planning to point, calk, and clean the building and that he had an appointment with a friend of his from the Chicago area who was interested in the contract. At that time Mr. Mackell advised Mr. Hunter that he had an acquaintance in that business in the Pittsburgh area who was competent to do this type of work—a Mr. Richard Graciano. Mr. Hunter was interested to learn that there was somebody competent within this area.

Mr. Mackell testified that he and Richard Graciano flew together in the naval reserve during portions of the years from 1947 to 1950. He telephoned Richard Graciano and made an appointment to see him in his office the following day. He told him about the contemplated work on the Grant Building. Mr. Graciano expressed an interest in procuring the job. Mr. Mackell testified that he advised Mr. Graciano that he would be "very interested in a commission from the

job, and I told him that I worked at ten per cent commission, and he said that I would be taken care of as far as the ten per cent was concerned, and that I was to introduce him to Verne Hunter." Mr. Mackell set up an appointment with Verne Hunter, he introduced Richard Graciano, and he took Mr. Hunter out to the Graciano Company to show him what equipment they had and to satisfy Mr. Hunter that they were able to do that type of work.

In the presence of Mr. Mackell, Mr. Hunter and Richard Graciano discussed a bid for cleaning the Grant Building in 1950. The Graciano Company submitted a written bid of $22,488. Two weeks later the plan to clean the building was abandoned.

From June of 1950, when Mr. Mackell introduced Mr. Graciano to Mr. Hunter, until the second contract of September 10, 1951, the three men continued to play golf at least once a week and have other social contacts. There had been no such relationship between Mr. Graciano and Mr. Hunter until the time of his introduction to Mr. Hunter by Mr. Mackell.

In September, 1951, Mr. Hunter sent word to the Graciano Company to have their representative call at his office to discuss work. Richard Graciano went to Mr. Hunter's office and was requested to prepare an estimate for the restoration of the exterior of the Grant Building. This estimate involved pointing, calking, and restoring the defective portions of the building. This was a more extensive contract than the original one bid on by Mr. Graciano. The Graciano Company offered to do this work for the sum of $47,504. The contract did not involve the cleaning of the whole building but only of a small portion for $3,530. This was included in the basic bid of $47,504. The Grant Building and the Gracianos entered into a contract on September 10, 1951. The work was completed in June, 1952.

In June of 1952 Mr. Mackell presented his claim for ten per cent commission to the Graciano Company on the contract entered into on September 10, 1951, for $47,504. According to Mr. Mackell, Mr. Graciano had stated that he would be paid when the contract was consummated. The payment was refused.

The Graciano Company disputed that any oral agreement had been made with Mr. Mackell to procure ten per cent commission. Richard Graciano admitted that he had been introduced to Mr. Hunter by Mr. Mackell as a result of an appointment made for the purpose of discussing the original contract contemplated for July of 1950. He admitted that the work to be undertaken was described in the presence of Leonard Mackell at the meeting of the parties. He admitted that Mr. Mackell had taken Verne Hunter to the Graciano plant. He denied that Mr. Mackell had ever discussed a ten per cent commission.

It was the contention of Richard Graciano that the original plan for the cleaning of the exterior of the Grant Building was abandoned and that he owed nothing to Leonard Mackell in connection with obtaining the second contract for pointing, calking, and restoring of the Grant Building for the sum of $47,504. He claimed that the commission the Graciano Company paid to its salesmen was six per cent, three per cent, and one per cent, depending on the nature of the contract. He denied that there was any discussion of commission by Mr. Mackell in connection with the procurement of the second contract, or that any commission on the first bid had ever been discussed.

Verne Hunter, a witness who testified at the first trial, died prior to the second trial. Regis Nairn, attorney for the plaintiff in the first trial, orally testified, over objection, to the testimony Mr. Hunter had given at the first trial. During the course of his examination, Mr. Nairn stated that he was trial counsel for the plaintiff and that he tried the case in 1956.

There was testimony that at the first trial Mr. Verne Hunter was called as a witness and that he substantiated the fact that he had discussed the Grant Building contract with Mr. Mackell, and that Mr. Mackell told him that he had a friend who was in the business. Mr. Hunter said, "Well, bring him around; we will see what we can do." He testified that on several occasions he was in the company of Mr. Mackell and Richard Graciano, and that Leonard Mackell had taken him out to see the Graciano plant. He stated that he was satisfied with what he saw, and that as a result of those meetings and his negotiations with the Graciano people, the contract was let.

When asked specifically if the contract would have been let to the Graciano Company by the Grant Building had it not been for Leonard Mackell's good offices, his answer was, "Well, I never heard of the Gracianos until Leonard brought them around." Mr. Hunter testified that he knew nothing about any arrangement between Mr. Mackell and the Gracianos.

We do not believe that the testimony given by Regis Nairn in the second trial, with respect to the testimony of Verne Hunter at the first trial, was truly prejudicial. The death of Mr. Hunter made it necessary to reconstruct his testimony, which established only the introduction and social activities—points which were acknowledged by the appellant. It was not established through Mr. Hunter that a ten per cent commission was to be given to Mr. Mackell.

The court below was of the opinion that the question of the right of the plaintiff to a ten per cent commission was a question properly submitted to the jury for determination. There was complete conflict in the testimony. The credibility of the witnesses was for the jury to resolve.

The appellants claim that they are entitled to judgment n.o.v. not only because the oral contract was in-

definite, but because the contract was not signed for more than a year from the day the plaintiff introduced Richard Graciano to the superintendent of the Grant Building. Mr. Graciano claims that while Mr. Mackell introduced him to Mr. Hunter, the original bid made after the introduction in the summer of 1950 was rejected. He claimed moreover that the contract finally executed was far more extensive and did not include the entire cleaning of the Grant Building. The 1951 bid included pointing, calking, replacement of brick masonry, and only a minor cleaning job. This extensive work resulted in a bid nearly twice that of the original bid submitted in 1950.

This is not a case involving technical ability on the part of the plaintiff to assist in the submission of bids. The plaintiff's claim is grounded on the fact that he introduced Richard Graciano to Verne Hunter, the superintendent of the Grant Building, and helped to establish a friendly relationship over a period of time which ultimately resulted in the contract negotiated between the parties. The testimony was that the social activities, including golf playing, took place during the entire period and included the period of the final contract.

The cases cited are so different on their facts that they could not be controlling in the case at bar.

We do not believe that the plaintiff failed to prove an unambiguous, complete, and definite agreement. There was sufficient established for a jury to believe that a commitment had been made by the Gracianos to pay Leonard Mackell ten per cent when the contract was consummated. Nor can it be said that the failure to get the original bid and the lapse of fifteen months before the second bid, changed the obligation to pay ten per cent commission. This was basically a jury question, which was resolved twice against the appellant.

The issues involved in this case are fairly summarized by the opinion of the court below: "The plaintiff was not instructed by defendants to secure a specific contract for them. His task was to introduce them to the manager of the Grant Building and help to establish a friendly relationship from which a contract could eventually be negotiated. The testimony shows that the plaintiff, Mr. Hunter and Richard Graciano played golf together several times during the entire period, up to and including the execution of the final contract. The fact that the contract concluded between the parties amounted to nearly twice as much as the original bid does not destroy the fact that it was the plaintiff who introduced the parties and helped to establish the friendship. He carried out his part of the bargain and the jury found that his efforts resulted in the accord essential to the final meeting of the minds of the contracting parties.

"The defendants introduced evidence that they paid their salesmen 6%, 3% and 1%, depending on the circumstances. While this may be true, and while the jury may have found it to be true, the jury was nevertheless entitled to believe the plaintiff's testimony that he was promised a commission of 10%."

Judgment affirmed.

Mr. Justice COHEN dissents.